NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CONNIE CARR, | Hon. Garrett E. Brown, Jr. |
| Plaintiff, | Civil No. 09-3760 |
| v. | **MEMORANDUM OPINION** |
| NJ CURE INSURANCE CO., | |
| Defendant. | |

**BROWN, Chief Judge**

This matter comes before the Court upon the motion for summary judgment (Doc. No. 14) of Defendant Citizens United Reciprocal Exchange (CURE).  The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons that follow, the Court will grant in part and deny in part Defendant's motion.

**I.    BACKGROUND**

In opposing Defendant's motion, Plaintiff failed to submit a responsive statement of material facts as required by Local Civil Rule 56.1, and instead filed a brief "Counter-Statement of Material Facts" that only contested portions of three paragraphs appearing in Defendant's 56.1 Statement.  Where a plaintiff does not contest statements appearing in a defendant's 56.1 Statement, the Court may deem the uncontested facts appearing in a defendant's 56.1 Statement to be admitted by the plaintiff if they are supported by the record.  *E.g.*, *Hill v. Algor*, 85 F. Supp.

2d 391, 408 (D.N.J. 2000) ("Facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted."). The Court finds that CURE's uncontroverted facts are supported by the record and will deem them as admitted. The Court will address the factual disputes raised in Plaintiff's "Counter-Statement" separately.

      The instant dispute arises from a motor vehicle accident involving Plaintiff Connie Carr that occurred on February 7, 2002 in Fort Lauderdale, Florida. At the time of the accident, Plaintiff was driving a 1993 Oldsmobile Cutlass covered by CURE's automobile insurance policy number J00014559 (hereinafter "policy"). Plaintiff had added the '93 Oldsmobile to the policy in January 2002 after she exchanged her 1991 Geo Metro for the car. In February 2002, Plaintiff provided CURE with a copy of the '93 Oldsmobile's registration, which indicated that the vehicle was registered to Plaintiff at 237 N. 1st Street, Surf City, New Jersey (hereinafter "New Jersey residence"). Plaintiff first notified CURE of the accident on June 12, 2002, and Plaintiff thereafter completed a Driver's Report of Automobile Accident and application for personal injury protection (PIP) benefits on or about June 27, 2002. These documents, signed by Plaintiff, identified her residence as "3015 N. Ocean Blvd., Fort Laud., FL" (hereinafter "Florida address"). (*See* Def.'s 56.1 Statement ¶¶ 5–7, 9; Block Certif. Exs. G, J.) In conjunction with the filing of the accident claim, Plaintiff, in the presence of her attorney, also made a recorded statement with CURE representatives via telephone on June 27, 2002 (hereinafter "June 27 statement"). (Def.'s 56.1 Statement ¶ 10; Block Certif. Ex. E.) During the June 27 statement, Plaintiff provided the following information in response to CURE's questions: (1) that she had been in Florida since November 2001, when she bought a condo there; (2) that she "like[d] to go [back to New Jersey] every three months"; (3) the she stopped living in the New Jersey residence

in March 2001; (4) that she (and/or her husband) sold the New Jersey residence in October 2001; (5) that she received the '93 Oldsmobile from a dealer in Florida; (6) that the dealer arranged for the '93 Oldsmobile to be registered in New Jersey, that Plaintiff received the registration papers in Florida, and that Plaintiff submitted registration papers listing the New Jersey residence; (7) and that she has kept the '93 Oldsmobile in a garage in Florida since she has owned it. (*See* Block Certif. Ex. E at 8–18, 27–28.)  Subsequent to Plaintiff's recorded statement, CURE denied coverage for Plaintiff's PIP claim on July 29, 2003, citing Plaintiff's "material misrepresentation[s] and/or omission[s]" concerning the garage location of the '93 Oldsmobile as grounds for retroactively voiding her policy. (Def.'s 56.1 Statement ¶ 23; Block Certif. Ex. I.)

Plaintiff filed suit on July 28, 2009, alleging breach of contract.  Plaintiff filed an Amended Complaint on April 16, 2010, adding a claim for declaratory judgment under 28 U.S.C. § 2201.  Defendant filed its Answer and Counterclaims on May 6, 2010, seeking a declaration that Plaintiff's material misrepresentations rendered the policy void, and damages under the New Jersey Insurance Fraud Prevention Act (NJIFPA), N.J. Stat. Ann. § 17:33A-1, et seq.  On September 24, 2010, CURE moved for summary judgment on all claims, or alternatively for dismissal due to lack of subject matter jurisdiction.

In support of her opposition, Plaintiff submitted an affidavit that disputes the veracity of certain statements she made during the July 27 recorded statement.  Among other things, Plaintiff now claims: (1) that she was "heavily medicated" during the June 27 recorded statement, "having recently had an increase in the dosage of anti-seizure medications [to treat symptoms that] result[ed] [from] the accident in February, 2002"; (2) that she never garaged the '93 Oldsmobile in Florida and never resided at the Florida residence; and (3) that she kept the car at a Long

3

Beach Island residence after the accident. (*See* Carr Aff. ¶¶ 2, 5–6.) Plaintiff further relies on deposition testimony that she gave on August 9, 2010, which also contradicts her June 27 statement. (*See* Carr Aff. ¶ 2 (adopting "the entirety" of her deposition testimony); Block Certif. Ex. N (Carr Dep.) at 47, 60, 72–97.)

## II.     SUBJECT MATTER JURISDICTION

Before the Court may address the merits of CURE's defenses and counterclaims, the Court must first determine the presence of subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative . . . .") (citation omitted). Plaintiff initiated this action in federal court under the auspices of diversity jurisdiction, asserting diversity of parties and an amount-in-controversy greater than $75,000. *See* 28 U.S.C. § 1332(a).[1] The parties' pleadings reflect that Plaintiff is currently a citizen of New York and that CURE is a New Jersey corporation with a principle place of business in New Jersey. (*See* Am. Compl. ¶¶ 2–5; Answer ¶ 3.) CURE does not now contest diversity of citizenship, but argues that Plaintiff cannot satisfy the diversity statute's amount-in-controversy requirement.

"A party who invokes the jurisdiction of the federal courts has the burden of demonstrating the court's jurisdiction." *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 541 (3d Cir. 1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189

---

[1]The Court notes that Plaintiff's claim for declaratory relief under 28 U.S.C. § 2201 does not independently confer jurisdiction to hear this dispute. *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950).

(1936)).  In diversity cases, courts "generally accept a party's good faith allegation of the amount in controversy, but where a defendant or the court challenges the plaintiff's allegations regarding the amount in question, the plaintiff who seeks the assistance of the federal courts must produce sufficient evidence to justify its claims."  *Columbia Gas*, 62 F.3d at 541 (citing *Burns v. Mass. Mutual Life Ins. Co.*, 820 F.2d 246, 248 (8th Cir.1987)).  In cases seeking declaratory or injunctive relief, "the amount in controversy is determined by 'the value of the object of the litigation.'"  *Columbia Gas*, 62 F.3d at 541 (citing *Hunt v. Wash. Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977); *McNutt*, 298 U.S. at 181).

The Supreme Court in *St. Paul Mercury Indemnity Co. v. Red Cab Co.* set forth the applicable rule for jurisdictional challenges involving the diversity statute's amount-in-controversy requirement.  According to *Red Cab*,

> [t]he rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

303 U.S. 283, 289 (1938) (footnotes omitted)*.*  The Third Circuit in *Columbia Gas* clarified the *Red Cab* standard as follows:

> [f]irst, dismissal is appropriate only if the federal court is certain that the jurisdictional amount cannot be met; the reasonable probability that the

>     amount exceeds [$75,000]² suffices to vest the court with jurisdiction.
>     Second, the ultimate failure to prove damages over [$75,000] does not
>     belatedly divest the federal court of jurisdiction unless the proofs at trial
>     demonstrate that the plaintiff never had a colorable claim that exceeded
>     $[75,000].

*Columbia Gas*, 62 F.3d at 541 (citations omitted).

Here, it is undisputed that insurance benefits are the object of the present litigation. Although the Amended Complaint contains a generic assertion of damages in excess of $75,000 and Plaintiff's initial Rule 26 disclosures suggest damages well below the $75,000 threshold (*see* Block certif. Ex. M), Plaintiff has now provided evidence, in the form of Medicare summary notices for treatment received, that she has incurred medical expenses totaling more than $288,000 since the 2002 car accident, of which Plaintiff concedes Medicare has reimbursed approximately $125,000. (*See* Thomas Certif. Exs. D–G, J.) Plaintiff has also provided the affidavit of Dr. Harvey Manes, an orthopedic surgeon, and the report of Dr. Waden E. Emery III, a neurologist, who both assert that Plaintiff has suffered significant injuries as a result of the 2002 accident. (Thomas Certif. Exs. C, I.) Specifically, Dr. Emery concluded, after reviewing numerous post-accident diagnostic tests conducted between 2002 and 2003, that Plaintiff had suffered a total permanent physical impairment of 20%. (*Id.* Ex. C at 4 (detailing her condition as consisting of impairments to the cranial nerve neuropathy, mental status, the greater occipital neuralgia, and an exacerbation of the cervical spine).) Dr. Manes, relying on Dr. Emery's report and his examination of Plaintiff, concluded that Plaintiff would require certain treatments for

---

²Since *Columbia Gas*, the diversity statute has been amended, such that the statute now requires an amount in controversy exceeding $75,000. For ease of reading, the Court has replaced the jurisdictional amount applicable at the time of *Columbia Gas* with the presently applicable jurisdictional amount.

involuntary facial spasms and maintenance of her cervical neurospinal stimulator (surgically implanted between 2008 and 2009 to reduce pain) for the rest of her life. (*Id.* Ex. I.)

CURE challenges Plaintiff's proffer on a number of grounds, including (1) that Plaintiff did not disclose these bills[3] or identify Dr. Manes as a treating physician prior to the instant motion; (2) that Plaintiff previously disclosed medical bills relating to another lawsuit, concerning a prior automobile accident in 2000, to support her claim of damages in this case; (3) that Dr. Manes does not explain the nature of his treatment of Plaintiff; and (4) that Dr. Manes and Dr. Emery failed to properly explain how they concluded that Plaintiff's present injuries were caused by the 2002 accident, as opposed to the 2000 accident. By comparison, CURE points to its Independent Medical Evaluation in November 2002, wherein the reviewing physician, Dr. Richard Kishner, attributed only a broken tooth, sternocleidomastoid and TMJ pain to the 2002 accident. (*See* Thomas Certif. Ex. B.)

The Court shares Defendant's dismay with Plaintiff's failure to disclose germane damages evidence prior to the instant motion. Nevertheless, under *Red Cab*, dismissal is only appropriate if the pleadings and evidentiary submissions demonstrate to a legal certainty that Plaintiff cannot recover the jurisdictional amount; conversely, jurisdiction is proper where the record suggests a reasonable probability that the Plaintiff can recover the jurisdictional amount. Defendant's objections to the methodology of Drs. Manes and Emery are more properly raised under the Rules of Evidence or during cross-examination; for present purposes, the Court need only determine that the medical reports were not prepared and submitted in a manner evincing

---

[3]CURE admits receiving a stack of Medicare summary notices from Plaintiff, but contends that Plaintiff did not explain how these treatments related to the 2002 accident. (*See* Def.'s Br. at 8–9.)

7

bad faith.  The Court has reviewed Plaintiff's medical billing records and the reports of Drs. Manes and Emery, and the Court is persuaded that Plaintiff has satisfied her burden of production under *Red Cab*.  Based on the evidence before the Court, this Court cannot say to a legal certainty that Plaintiff could not recover the jurisdictional amount.  Consequently, the Court will exercise diversity jurisdiction pursuant to 28 U.S.C. § 1332(a).

**III.    SUMMARY JUDGMENT**

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prod. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no triable issue exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor).  In deciding whether triable issues of fact exist, this Court must view the underlying facts and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita*, 475 U.S. at 587; *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).  The opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."  Fed. R. Civ. P. 56(e)(2).

CURE moves for summary judgment on both Plaintiff's claims and its counterclaims,

arguing: (1) that Plaintiff's claims are barred by the statute of limitations applicable to automobile insurance PIP claims, N.J. Stat. Ann. § 39:6A-13.1 (hereinafter "PIP statute of limitations"); (2) that, pursuant to the New Jersey Insurance Fraud Prevention Act (NJIFPA), N.J. Stat. Ann. § 17:33A-1, et seq., Plaintiff's insurance policy should be declared void *ab initio* due to Plaintiff's fraudulent statements; and (3) that CURE is entitled to compensatory and treble damages for Plaintiff's violation of NJIFPA. The Court considers each argument in turn.

*A. Statute of Limitations*

The initial question this Court must answer is whether the PIP statute of limitations applies to Plaintiff's claims. Plaintiff argues that because CURE improperly voided the policy in 2003, her action is not governed by § 39:6A-13.1, but by the six-year statute of limitations applicable to claims for breach of contract, *see* N.J.S.A. 2A:14-1. Plaintiff correctly notes that, absent an express policy provision or statute to the contrary, the six-year limitations period applies to suits based on insurance policies. *See, e.g.*, *Crest-Foam Corp. v. Aetna Ins. Co.*, 320 N.J. Super. 509, 517 (App. Div. 1999). However, the Court is persuaded that this case falls within the express language of the PIP statute of limitations.

Section 39:6A-13.1 provides as follows:

> Every action for the payment of benefits payable under a standard automobile insurance policy pursuant to sections 4 and 10 of P.L.1972, c. 70 (C.39:6A-4 and 39:6A-10), medical expense benefits payable under a basic automobile insurance policy pursuant to section 4 of P.L.1998, c. 21 (C.39:6A-3.1) or benefits payable under a special automobile insurance policy pursuant to section 45 of P.L.2003, c.89 (C.39:6A-3.3), except an action by a decedent's estate, shall be commenced not later than two years after the injured person or survivor suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the loss or expense was caused by the accident, or not later than four years after the accident whichever is earlier, provided,

>however, that if benefits have been paid before then an action for further benefits may be commenced not later than two years after the last payment of benefits.

Although Plaintiff portrays her claim as a simple breach of contract claim, Plaintiff does not deny that the present action seeks "the payment of benefits" under a qualifying New Jersey automobile insurance policy. Indeed, the pleadings make clear that Plaintiff seeks benefits under her automobile insurance policy. Plaintiff's original Complaint presented only one claim for breach of contract. (*See generally* Compl.) Although the Amended Complaint included a separate claim for declaratory judgment, Plaintiff still seeks the benefits denied under the insurance policy. (*See* Am. Compl. ¶ 12 (requesting a judgment directing CURE to "make claim for, adjust, and distribute the proceeds of the loss to plaintiff and/or to reimburse her for any claim, loss, or expense incurred in connection with the [insurance] policy").) Because the plain language of the PIP statute of limitations premises the limitations period on the type of insurance policy and damages sought—"[e]very action for the payment of benefits payable under a standard automobile insurance policy"—the Court fails to see how Defendant's cancellation of the policy in 2003 affects the limitations period applicable to Plaintiff's claims for benefits under the policy.

Alternatively, Plaintiff argues that CURE's "demonstrably meritless" cancellation of the policy and counterclaim for declaratory judgment provides equitable grounds for tolling the limitations period. (*See* Pl.'s Br. at 5–6.) Plaintiff also appears to suggest that her claims are not subject to a statute of limitations, because she seeks declaratory relief, and New Jersey's Declaratory Judgment Act, N.J. Stat. Ann. § 2A:16-50–62, does not contain a statute of

limitations.[4] *See Ballantyne House Assocs. v. City of Newark*, 269 N.J. Super. 322, 330 (App. Div. 1993). The Court disagrees on both counts.

Preliminarily, the Court notes that New Jersey courts have been reluctant to toll the limitations period provided by § 39:6A-13.1. *E.g.*, *Cruz-Diaz v. Hendricks*, 409 N.J. Super. 268, 282 (App. Div. 2009) (concluding that the general tolling statute, N.J. Stat. Ann. 2A:14-21, which permits tolling of the statute of limitations for minors and the insane, did not apply to the PIP statute of limitations); *McLaughlin v. Metzner*, 201 N.J. Super. 51, 54 (App. Div. 1985) (same). That said, Plaintiff has not presented equitable grounds for tolling the limitations period. Plaintiff points to no evidence that CURE's cancellation was facially meritless. Indeed, the undisputed record reflects that Plaintiff's June 27 statement included concessions that would lead a reasonable person to believe that she had procured automobile insurance through misrepresentations about her residency and the permanent location of the automobile. Under the circumstances, whether or not Plaintiff's June 27 statement was accurate, the Court cannot say that CURE's response was demonstrably unreasonable. Furthermore, Plaintiff does not suggest that Defendant's conduct of cancelling her policy in any way inhibited her from complying with the PIP statute of limitations.

To the extent that Plaintiff claims her Amended Complaint is not subject to a statute of limitations because she seeks declaratory relief, Plaintiff overlooks the well-established principle that claims for declaratory relief are subject to the same statute of limitations that applies to the underlying legal action. *E.g.*, *Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178

---

[4]Plaintiff's invocation of the New Jersey Declaratory Judgment Act is puzzling, considering that Plaintiff brought her claim for declaratory relief pursuant to 28 U.S.C. § 2201, a federal law. (Am. Compl. ¶ 12.)

11

(3d Cir. 1997) ("[W]hen plaintiffs' claims are barred by a statute of limitations applicable to a concurrent legal remedy, then a court will withhold declaratory judgment relief in an independent suit essentially predicated upon the same cause of action."); 26 Corpus Juris Secondum, Declaratory Judgments § 112 (West 2011); *see also Town of Orangetown v. Gorsuch*, 718 F.2d 29 (2d Cir. 1983) (concluding, under New York law, that if "a claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time will govern"). The fact that CURE filed counterclaims seeking a declaration of non-coverage in response to Plaintiff's Complaint does not alter this principle. Here, Plaintiff seeks only legal relief: benefits denied under her insurance policy. Artful pleading in the Amended Complaint does not alter this essential foundation. The express language of the PIP statute of limitations extends to this type of claim. *See* N.J. Stat. Ann. § 39:6A-13.1 (extending PIP limitations period to "[e]very action for the payment of benefits payable under a standard automobile insurance policy").

The New Jersey Supreme Court in *Ochs v. Federal Insurance Co.* held that, pursuant to the PIP statute of limitations, "the two-year [limitations] period beg[ins] to run 'from either the date of the accident or from the date on which the insured became aware that his injuries were related to the accident.'" *See* 90 N.J. 108, 113 (1982) (quoting and adopting the rule set forth in *Danilla v. Leatherby Ins. Co.*, 168 N.J. Super. 515, 519 (App. Div. 1979)). The outer limit to the limitations period under the statute is four years after the accident. N.J. Stat. Ann. § 39:6A-13.1 ("Every action . . . shall be commenced not later than two years after the injured person or survivor suffers a loss or incurs an expense and either knows or in the exercise of reasonable diligence should know that the loss or expense was caused by the accident, or not later than *four*

*years* after the accident *whichever is earlier . . . .*" (emphasis added)); *see also Aponte-Correa v. Allstate Ins. Co.*, 162 N.J. 318, 321 (2000). The statute provides an exception to this limitations period where the insurer has already paid benefits under the insurance policy. N.J. Stat. Ann. § 39:6A-13.1 ("[P]rovided, however, that if benefits have been paid before then an action for further benefits may be commenced not later than two years after the last payment of benefits."). Here, there is no dispute that Plaintiff filed her original Complaint in July 2009, more than seven years after the subject automobile accident in February 2002. Plaintiff does not suggest that CURE ever paid benefits under the policy. Therefore, Plaintiff's Complaint falls well outside the limitations period imposed by the PIP statute of limitations and is barred as a matter of law. The Court will grant CURE's motion for summary judgment on Plaintiff's affirmative claims.

### B. NJIFPA & CURE's Counterclaims

Having resolved Plaintiff's affirmative claims in favor of Defendant, the Court turns to Defendant's counterclaim arguments. Based on CURE's motion brief, it appears Defendant bases its NJIFPA claim on N.J. Stat. Ann. § 17:33A-4a(2), which prohibits "prepar[ing] or mak[ing] any written or oral statement that is intended to be presented to any insurance company . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim."[5] Defendant argues that the undisputed record reveals that Plaintiff knowingly made material misrepresentations regarding her residence both before and after the 2002 accident that violated NJIFPA. Plaintiff contests the merits of Defendant's

---

[5]Defendant's Answer and Counterclaims did not specify a substantive NJIFPA provision, and Defendant's motion brief cites N.J. Stat. Ann. § 17:33A-4(4)(6) (Def.'s Br. at 13), which is a non-existent provision. The Court construes Defendant's claim to fall under § 17:33A-4a(2), based upon Defendant's characterization of the statutory language, but this presumption does not affect the outcome of the motion.

contentions on the grounds of Plaintiff's deposition testimony and affidavit, and also argues that Defendant's claim is barred by NJIFPA's six-year statute of limitations, N.J. Stat. Ann. § 17:33A-7e. Because the Court agrees with Plaintiff that the statute of limitations bars Defendant's NJIFPA Counterclaim, the Court need not resolve the merits of the claim.

Section 17:33A-7e provides that "No action shall be brought by an insurance company under this section more than six years after the cause of action has accrued." CURE provides no authority for when a cause of action accrues under NJIFPA, but argues that "this Court can conclude that its IFPA cause of action against Plaintiff accrued, when she filed the within lawsuit, requiring CURE to defend same, knowing full well that her material misrepresentations in her policy should preclude any claim in relation to said policy." (Def.'s Reply Br. at 18.) This Court disagrees.

The issue of when a cause of action accrues under NJIFPA appears to be one of first impression. The surrounding provisions of the Act do not specify when a cause of action accrues. The civil suit provision, or standing provision, in subsection 7a merely states "[a]ny insurance company damaged as the result of a violation of any provision of this act may sue therefor in any court of competent jurisdiction to recover compensatory damages, which shall include reasonable investigation expenses, costs of suit and attorneys fees." N.J. Stat. Ann. § 17:33A-7a. In lieu of clear guidance from the statute or case law, the Court finds instructive New Jersey's accrual rule for common law fraud cases, because an NJIFPA claim is a form of fraud claim.

Generally speaking, a cause of action accrues under New Jersey law on "the date on which 'the right to institute and maintain a suit' first arose." *Rosenau v. City of New Brunswick*,

14

51 N.J. 130, 137 (1968) (quoting *Fredericks v. Town of Dover*, 125 N.J.L. 288, 291 (E. & A. 1940)); *see also Russo Farms, Inc. v. Vineland Bd. of Educ.*, 144 N.J. 84, 98 (1996). For fraud claims, a court's determination of when the cause of action accrued is guided by the legal elements necessary to state a claim for fraud, which are: (1) a knowing, material misrepresentation; (2) intent that the receiving party would rely on the misrepresentation; and (3) reliance on those misrepresentations to the detriment of the relying party. *See, e.g.*, *Hartford Acc. & Indem. Co. v. Baker*, 208 N.J. Super. 131, 136 (L. Div. 1985) (citing *Bilotti v. Accurate Forming Corp.*, 39 N.J. 184 (1963); *United Jersey Bank v. Wolosoff*, 196 N.J. Super. 553 (App. Div. 1984)). Because damages are an integral part of a common law fraud claim, the cause of action "will accrue only when 'damage' is inflicted." *Holmin v. TRW, Inc.*, 330 N.J. Super. 30, 36 (App. Div. 2000). Thus, in order to determine when CURE's cause of action accrued, the Court must consider when the alleged material misrepresentations occurred, and when the alleged injury to CURE took place.

According to CURE, Plaintiff made material misrepresentations both before and after the 2002 accident, consisting of: (a) her failure to disclose her relocation to Florida, (b) her submission of a New Jersey registration card bearing an inaccurate New Jersey residence when she added the '93 Oldsmobile to the insurance policy in or about January 2002, and (c) information she gave during the June 27 recorded statement. (*See* Def.'s Br. at 16–19.) These circumstances suggest that CURE's cause of action accrued, at the latest, on June 27, 2002, when Plaintiff revealed during the recorded statement that she had failed to disclose her change of

15

address.[6] Nevertheless, CURE argues that its cause of action accrued when Plaintiff filed her Complaint in July 2009, because CURE suffered a distinct injury from having to defend against Plaintiff's lawsuit. (*See* Def.'s Reply Br. at 18.) Defendant also contends that Plaintiff made additional misrepresentations in her 2010 deposition testimony and affidavit, when she contradicted statements made during the June 27 statement. (*See* Def.'s Br. at 19–20.) However, neither Plaintiff's filing of a lawsuit in 2009 nor Plaintiff's alleged misrepresentations made during this litigation is the underlying event that gave rise to Defendant's cause of action, because it cannot be said that Defendant relied on these alleged misrepresentations to its detriment. Rather, accepting CURE's theory of misrepresentation to be true for purposes of argument, Plaintiff made material misrepresentations and/or omissions during 2001 and 2002, which were revealed by concessions she made during the recorded statement of June 27, 2002. CURE appears to have relied on the June 27 statement when it cancelled Plaintiff's policy in 2003 (*see* Block Certif. Ex. I (citing misrepresentations and omissions regarding where the '93 Oldsmobile was garaged as grounds for cancellation of the policy)), and it relies heavily on the June 27 statement now in seeking summary judgment. Such reliance reveals that, as of June 27, 2002, CURE had reason to believe that Plaintiff had knowingly made material misrepresentations to procure automobile insurance she otherwise would not have been able to obtain.

To the extent that CURE argues that it did not suffer an injury at all until Plaintiff filed the instant lawsuit, the Court disagrees. Even though Defendant did not pay benefits on Plaintiff's policy, presuming that material misrepresentations were made, CURE suffered a

---

[6]In reviewing the circumstances giving rise to Defendant's counterclaims, the Court makes no factual determination regarding the accuracy of Plaintiff's insurance submissions or her June 27 statement.

16

cognizable injury when it received the fraudulent claim for PIP benefits on or about June 27, 2002, because CURE had to expend resources investigating the claim.  Further, CURE's injury would have dated back to the point of the insured's first misrepresentation, because CURE would have expended resources when it approved the insurance application in the first place.  To hold otherwise would require an insurance company to be sued by the insured *before* the insurance company would have standing to bring an NJIFPA claim.  The statute does not contain such a prerequisite, and New Jersey courts have not construed NJIFPA in such a manner.  *See, e.g.*, *Allstate Ins. Co. v. Greenberg*, 376 N.J. Super. 623, 638–41 (L. Div. 2004) (recognizing that "each and every submission of documents to an insurance carrier in support of payment for PIP medical benefits to which a health care provider knowingly is not entitled or concealment of material facts, such as self interest, is a separate offense" under the NJIFPA, and entering judgment in favor of the insurance company); *Material Damage Adjustment Corp. v. Open MRI of Fairview*, 352 N.J. Super. 216, 230–31 (L. Div. 2002) (entering judgment in favor of insurance company where defendant, an unlicensed health care provider, had submitted numerous claims for reimbursement without disclosing its license status).

      Because Defendant's NJIFPA counterclaim arises from alleged misrepresentations it would have relied upon prior to the June 27 statement, and because Defendant would have had reason to suspect an injury based on Plaintiff's statements during the June 27 statement, this Court concludes that Defendant's NJIFPA counterclaim accrued on or about June 27, 2002. Consequently, the statute of limitations for Defendant's NJIFPA counterclaim expired at the end of June 2008, more than a year before the filing of the instant lawsuit.  Therefore, the Court will

deny Defendant's motion with respect to its NJIFPA counterclaim.[7]

**IV.   CONCLUSION**

For the aforementioned reasons, the Court will grant in part and deny in part Defendant's motion for summary judgment. (Doc. No. 14.) An appropriate form of order accompanies this Memorandum Opinion.


Dated: January 31, 2011

                                                                                /s/ Garrett E. Brown, Jr.
                                                             GARRETT E. BROWN, JR., U.S.D.J.

---

[7] In light of the Court's ruling, the Court anticipates that Plaintiff will move for summary judgment on Defendant's NJIFPA counterclaim.