**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                                        )
CONNIE CARR,                            )
                                        )          Hon. Garrett E. Brown,
                    Plaintiff,          )
                                        )          Civil No. 09-3760
             v.                         )
                                        )          **MEMORANDUM OPINION**
NJ  CURE INSURANCE CO.,                 )
                                        )
                    Defendant.          )
_____)

**BROWN, Chief Judge**

       This matter comes before the Court upon the motion for dismissal and/or summary

judgment (Doc. No. 40) filed by Plaintiff Connie Carr ("Plaintiff").  Plaintiff seeks judgment on

Defendant Citizens United Reciprocal Exchange's (CURE) counterclaim under the New Jersey

Insurance Fraud Prevention Action (NJIFPA), on the ground that the claim is barred by

NJIFPA's six-year statute of limitations, N.J. Stat. Ann. § 17:33A-7e.  The Court has considered

the parties' submissions and decided the motion without oral argument pursuant to Federal Rule

of Civil Procedure 78.  For the following reasons, the Court will grant Plaintiff's motion for

summary judgment on CURE's NJIFPA counterclaim.


**I.      BACKGROUND**

       As noted in this Court's January 31, 2011 Opinion ("January 31 Opinion"), this insurance

dispute arises from a February 7, 2002 car accident in Fort Lauderdale, Florida, and CURE's

subsequent denial of coverage.  At the time of the  accident, Plaintiff was driving a 1993

1

Oldsmobile Cutlass covered by CURE's automobile insurance policy number J00014559. (January 31 Opinion at 2 (citations omitted).)  Plaintiff first notified CURE of the accident on June 12, 2002, and Plaintiff thereafter completed a Driver's Report of Automobile Accident and application for personal injury protection (PIP) benefits on or about June 27, 2002.  (*Id.*)  In conjunction with the filing of the accident claim, Plaintiff, in the presence of her attorney, made a recorded statement with CURE representatives via telephone on June 27, 2002.  During the recorded statement, Plaintiff revealed *inter alia* that she had moved to Florida and that she kept the covered vehicle garaged in Florida.  (*Id.* at 2–3.)  Subsequent to Plaintiff's recorded statement, CURE denied coverage for Plaintiff's PIP claim on July 29, 2003, citing Plaintiff's "material misrepresentation[s] and/or omission[s]" concerning Plaintiff's move to Florida as grounds for retroactively voiding her policy.  (*Id.* at 3.)

Plaintiff filed suit on July 28, 2009, alleging breach of contract, and filed an Amended Complaint on April 16, 2010, adding a claim for declaratory judgment under 28 U.S.C. § 2201. Defendant filed its Answer and Counterclaims on May 6, 2010, seeking a declaration that Plaintiff's material misrepresentations rendered the policy void, as well as damages under the NJIFPA, N.J. Stat. Ann. §17:33A-1, et seq.  On September 24, 2010, CURE moved for summary judgment on all claims, or alternatively for dismissal due to lack of subject matter jurisdiction.

The Court resolved CURE's motion by Opinion and Order of January 31, 2010.  First, the Court addressed CURE's jurisdictional arguments, and held that diversity jurisdiction was proper under 28 U.S.C. § 1332(a).  (*Id.* at 4–8.)  The Court then granted CURE's motion for summary judgment on Plaintiff's affirmative claims, finding that Plaintiff's Complaint in July 2009, more than seven years after the subject automobile accident in February 2002, fell outside the

limitations period imposed by the PIP statute of limitations, N.J. Stat. Ann. § 39:6A:14-1, and was therefore time-barred.  (*Id.* at 9–13.)

At the same time, the Court denied Defendant's motion for summary judgment on its NJIFPA counterclaim, reasoning that the claim was barred by NJIFPA's six-year statute of limitations, N.J. Stat. Ann. § 17:33A-7e.[1]  (January 31 Opinion at 17–18.)  In denying summary judgement on the CURE's counterclaim, the Court acknowledged that accrual under NJIFPA statute of limitations was an issue of first impression, and in lieu of clear guidance on the matter, this Court looked to New Jersey's accrual rule for common law fraud cases for guidance.  The Court reasoned:

> Generally speaking, a cause of action accrues under New Jersey law on "the date on which 'the right to institute and maintain a suit' first arose." *Rosenau v. City of New Brunswick*, 14 51 N.J. 130, 137 (1968) (quoting *Fredericks v. Town of Dover*, 125 N.J.L. 288, 291 (E. & A. 1940)); *see also Russo Farms, Inc. v. Vineland Bd. of Educ.*, 144 N.J. 84, 98 (1996). For fraud claims, a court's determination of when the cause of action accrued is guided by the legal elements necessary to state a claim for fraud, which are: (1) a knowing, material misrepresentation; (2) intent that the receiving party would rely on the misrepresentation; and (3) reliance on those misrepresentations to the detriment of the relying party. *See, e.g.*, *Hartford Acc. & Indem. Co. v. Baker*, 208 N.J. Super. 131, 136 (L. Div. 1985) (citing *Bilotti v. Accurate Forming Corp.*, 39 N.J. 184 (1963); *United Jersey Bank v. Wolosoff*, 196 N.J. Super. 553 (App. Div. 1984)).  Because damages are an integral part of a common law fraud claim, the cause of action "will accrue only when 'damage' is inflicted." *Holmin v. TRW*, Inc., 330 N.J. Super. 30, 36 (App. Div. 2000). Thus, in order to determine when CURE's cause of action accrued, the Court must consider when the alleged material misrepresentations occurred, and when the alleged injury to CURE took place.

(*Id.* at 14–15.)

---

[1] Section 17:33A-7e provides that "[n]o action shall be brought by an insurance company under this section more than six years after the cause of action has accrued."

CURE had argued that Plaintiff made material misrepresentations both before and after the 2002 accident, consisting of: (a) her failure to disclose her relocation to Florida, (b) her submission of a New Jersey registration card bearing an inaccurate New Jersey residence when she added the '93 Oldsmobile to the insurance policy in or about January 2002, and (c) information she gave during the June 27 recorded statement.  Nevertheless, CURE argued that its cause of action accrued when Plaintiff filed her Complaint in July 2009, because CURE suffered a distinct injury from having to defend against Plaintiff's lawsuit.  Toward this end, Defendant argued that Plaintiff made additional misrepresentations during this litigation with her 2010 deposition testimony and affidavit, which CURE claimed contradicted statements made during the June 27 statement.  This Court rejected that argument as follows:

> neither Plaintiff's filing of a lawsuit in 2009 nor Plaintiff's alleged misrepresentations made during this litigation is the underlying event that gave rise to Defendant's cause of action, because it cannot be said that Defendant relied on these alleged misrepresentations to its detriment. Rather, accepting CURE's theory of misrepresentation to be true for purposes of argument, Plaintiff made material misrepresentations and/or omissions during 2001 and 2002, which were revealed by concessions she made during the recorded statement of June 27, 2002.  CURE appears to have relied on the June 27 statement when it cancelled Plaintiff's policy in 2003, and it relies heavily on the June 27 statement now in seeking summary judgment. Such reliance reveals that, as of June 27, 2002, CURE had reason to believe that Plaintiff had knowingly made material misrepresentations to procure automobile insurance she otherwise would not have been able to obtain.

(*Id.* at 16 (record citations omitted).)  With regard to CURE's argument that it did not suffer an injury at all until Plaintiff filed the lawsuit,  the Court disagreed, reasoning that:

> [e]ven though Defendant did not pay benefits on Plaintiff's policy, presuming that material misrepresentations were made, CURE suffered a cognizable injury when it received the fraudulent claim for PIP benefits on or about June 27, 2002, because CURE had to expend resources investigating the claim.  Further, CURE's injury would have dated back

to the point of the insured's first misrepresentation, because CURE would have expended resources when it approved the insurance application in the first place. To hold otherwise would require an insurance company to be sued by the insured before the insurance company would have standing to bring an NJIFPA claim. The statute does not contain such a prerequisite, and New Jersey courts have not construed NJIFPA in such a manner. *See, e.g.*, *Allstate Ins. Co. v. Greenberg*, 376 N.J. Super. 623, 638–41 (L. Div. 2004) (recognizing that "each and every submission of documents to an insurance carrier in support of payment for PIP medical benefits to which a health care provider knowingly is not entitled or concealment of material facts, such as self interest, is a separate offense" under the NJIFPA, and entering judgment in favor of the insurance company); *Material Damage Adjustment Corp. v. Open MRI of Fairview*, 352 N.J. Super. 216, 230–31 (L. Div. 2002) (entering judgment in favor of insurance company where defendant, an unlicensed health care provider, had submitted numerous claims for reimbursement without disclosing its license status).

(*Id.* at 16–17.)

Ultimately, the Court determined that Defendant's NJIFPA counterclaim accrued on or about June 27, 2002, because it arose from alleged misrepresentations that CURE would have relied upon prior to the June 27 statement, "and because Defendant would have had reason to suspect an injury based on Plaintiff's statements during the June 27 statement." (*Id.* at 17.) The Court therefore concluded that the six-year statute of limitations for Defendant's NJIFPA counterclaim expired at the end of June 2008, more than a year before the filing of this lawsuit, and nearly two years before Defendant filed its counterclaims. (*Id.*) In light of this ruling denying summary judgment on Defendant's counterclaim, the Court anticipated that Plaintiff would move for summary judgment on the NJIFPA counterclaim. (January 31 Opinion at 18 n.7.)

## II.   ANALYSIS

As anticipated, Plaintiff now moves for summary judgment on the sole remaining claim

in this action, CURE's counterclaim under the NJIFPA, on the grounds that the claim is time

barred.  Plaintiff relies on the Court's January 31 Opinion, contending that no genuine issue of

fact remains for resolution.  CURE did not make a timely motion for reconsideration of the

January 31 Opinion pursuant to Local Civil Rule 7.1(i).  Nevertheless, the procedural posture of

this motion is akin to a motion for reconsideration, because both parties had the opportunity to

fully brief the matter, and the Court has already decided this exact issue.  No genuine issues of

fact remain that would preclude summary judgment on this narrow issue of law.  Accordingly,

the Court will be guided by the standard applicable to motions for reconsideration.

Reconsideration is not warranted here, because CURE has not shown a change in the controlling

law, new evidence that was previously unavailable, legal or factual issues which this Court has

overlooked, or clear error in this Court's judgment that would result in manifest injustice.  *See,*

*e.g.*, *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995); *Harsco*

*Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985); *Database Am., Inc. v. Bellsouth Adver. &*

*Publ'g Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993).

   CURE puts forth two legal arguments in opposition to summary judgment on its

counterclaim.  First, CURE argues that Plaintiff's motion is procedurally defective, because

Plaintiff failed to file a statement of undisputed facts, in violation of Local Civil Rule 56.1.

Second, CURE argues that this Court's statute-of-limitations decision is wrong, because CURE

was not injured by Plaintiff's alleged misrepresentations until Plaintiff filed suit in July 2009.

CURE describes the costs incurred with the processing of Plaintiff's insurance application and

accident claim as routine business costs in the insurance business, and therefore argues that the

initial misrepresentation and subsequent approval of Plaintiff's policy should not be treated as an

infliction of damages.  (Def.'s Resp. Br. at 3–4 (citing *Holmin v. TRW, Inc.*, 330 N.J. Super. 30, 36 (App. Div. 2000) for proposition that a fraud cause of action does not accrue until actual damages occur).)  Defendant also argues that the decisions cited by this Court are distinguishable because the insurance companies in those cases sustained damages when payments were made in connection with a PIP claim.  (*Id.* at 5–6.)  In making these arguments, CURE recognizes that the Court has already rendered an adverse ruling on the NJIFPA statute of limitations issue, and CURE seeks to preserve its appellate rights in the event of an appeal.  (*Id.* at 8.)

This Court does not find Defendant's arguments meritorious.  In regards to Defendant's first argument, the Court notes that the relevant facts for this motion were sufficiently identified by 56.1 statements submitted with the prior motion for summary judgment.  The current motion does not present any genuine disputes of material fact that would preclude summary judgment; rather, the present motion presents a narrow legal issue.  The Court is further satisfied that, when Defendant objected on the grounds of the missing 56.1 statement, Plaintiff promptly filed a 56.1 Statement with her reply brief.  (*See* Doc. No. 43.)  Under these circumstances, Plaintiff's initial failure to include the 56.1 Statement did not prejudice Defendant or inhibit the Court's consideration of the motion.

Turning to CURE's NJIFPA claim, this Court maintains its previous holding that CURE suffered injuries as a result of Plaintiff's alleged misrepresentations during the procurement of the insurance policy, prior to the June 27, 2002 recorded statement.  Accepting Defendant's claim that Plaintiff misrepresented her residence during the procurement of the policy, Defendant incurred costs in issuing an improper New Jersey insurance policy and investigating Plaintiff's car accident.  Although the record does not specify the exact nature of these costs, it is undisputed

that CURE conducted the June 27, 2002 recorded statement, and as a result of its subsequent investigation, denied Plaintiff's claim in July 2003.  During its investigation, it appears that CURE participated in taking Plaintiff's Statement Under Oath in February and May 2003.  (*See* Block Certif. Exs. F, K (noting appearances of counsel for NJ CURE).)  One can reasonably deduce from this record that the costs incurred by CURE's post-accident investigation were not *de minimis*.  Defendant does not deny that it incurred these costs, but characterizes these costs as routine costs of business.  However, if Plaintiff had not made the alleged misrepresentations regarding her residence, Defendant maintains that it would not have added the '93 Oldsmobile to the policy.  (*See* Def.'s Initial SJ Br., Doc. No. 14, at 17.)  If Defendant had not issued an improper insurance policy, it would have no reason to investigate Plaintiff's insurance claim for the 2002 accident.  As the Court previously noted, CURE appears to have relied on the June 27 statement when it cancelled Plaintiff's policy in 2003 and when CURE moved for summary judgment on the counterclaim.  (January 31 Opinion at 16.)   The Court's reasoning remains sound:

> Because Defendant's NJIFPA counterclaim arises from alleged misrepresentations it would have relied upon prior to the June 27 statement, and because Defendant would have had reason to suspect an injury based on Plaintiff's statements during the June 27 statement, this Court concludes that Defendant's NJIFPA counterclaim accrued on or about June 27, 2002. Consequently, the statute of limitations for Defendant's NJIFPA counterclaim expired at the end of June 2008, more than a year before the filing of the instant lawsuit.

(*Id.* at 17.)

This Court's reference to reliance as a means of ascertaining injury under NJIFPA should not be construed as a ruling that reliance is an essential element of an NJIFPA claim.  Both in their original motion arguments and in opposition to the present motion, CURE has failed to show

that Plaintiff's alleged misrepresentations during this litigation constitutes distinct, actionable injuries under NJIFPA so as to re-set the statute of limitations.  Indeed, CURE provides no persuasive authority for the proposition that a legal filing constitutes a violation of the NJIFPA. *See* N.J. Stat. Ann. § 17:33A-4a(2) (prohibiting "prepar[ing] or mak[ing] any written or oral statement that is intended to be presented *to any insurance company* . . . knowing that the statement contains any false or misleading information concerning any fact or thing material to the claim.") (emphasis added).  In an attempt to minimize the import of the costs they incurred by processing and investigating Plaintiff's policy, CURE surprisingly suggests that a court would not recognize its NJIFPA claim if it was based entirely on the alleged misrepresentations revealed during the June 27 recorded statement.  (*See* Def.'s Br. at 5. ("It would be virtually impossible for a carrier to convince a court that it was entitled to compensatory damages from its policyholder under the Act, simply for taking a recorded statement in the regular course of business, which was ultimately deemed to have revealed a material misrepresentation.")  But if CURE truly was not injured by the alleged NJIFPA violation—the misrepresentations revealed in the June 27 statement—then it would appear that CURE would not have standing to bring an NJIFPA claim in the first place.

Ultimately, CURE has not shown a change in the controlling law, new evidence that was previously unavailable, legal or factual issues which this Court has overlooked, or clear error in this Court's judgment that would result in manifest injustice.  The Court stands by its conclusion that CURE's NJIFPA claim accrued on or about June 27, 2002, and thus CURE's counterclaim filed in May 2010 is barred by the NJIFPA's six-year statute of limitations, N.J. Stat. Ann. § 17:33A-7e.

9

The parties offer no argument regarding the effect of this ruling on CURE's related counterclaims for declaratory relief, but it stands to reason that these claims must fail for the same reason that Plaintiff's claim for declaratory relief failed: the untimeliness of the underlying claim. *See, e.g.*, *Algrant v. Evergreen Valley Nurseries Ltd. P'ship*, 126 F.3d 178, (3d Cir. 1997) ("[W]hen plaintiffs' claims are barred by a statute of limitations applicable to a concurrent legal remedy, then a court will withhold declaratory judgment relief in an independent suit essentially predicated upon the same cause of action."); 26 Corpus Juris Secondum, Declaratory Judgments § 112 (West 2011); *see also Town of Orangetown v. Gorsuch*, 718 F.2d 29 (2d Cir. 1983) (concluding, under New York law, that if "a claim for declaratory relief could have been resolved through another form of action which has a specific limitations period, the specific period of time will govern").  Here, both Plaintiff's and CURE's underlying claims are time-barred, and CURE offers no defense of the timeliness of its claims for declaratory relief.  Accordingly, the Court will grant summary judgment against Defendants' counterclaims in their entirety.

## III.   CONCLUSION

For the aforementioned reasons, the Court will grant Plaintiff's motion.  (Doc. No. 40.) An appropriate form order accompanies this Memorandum Opinion.


Dated: June 30, 2011

     /s/ Garrett E. Brown, Jr.     

GARRETT E. BROWN, JR. U.S.D.J.
